SCHENCK, PRICE, SMITH & KING, LLP
John P. Campbell (JC-8746)
305 Broadway, Suite 900
New York, New York 10007
(212) 822-1494
*Attorneys for Defendant Hooper Evaluations, Inc.,*
*a/k/a D&D-Hooper Evaluations*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

---

GREGORY SUNDAHL, individually and JESSE
SUNDAHL, individually and on behalf of all others     Case No.:  2:08-CV-1342-JS-WDW
similarly situated,

Plaintiffs,

v.

 STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, an Illinois corporation,
PREFERRED CONSULTING SERVICES, INC., a
New York Corporation; HOOPER EVALUATIONS,
INC. a/k/a D&D-HOOPER EVALUATIONS, a New
York Corporation; JOHN AND JANE DOES; ABC
CORPORATIONS; and OTHER UNKNOWN
ENTITIES

Defendants.

---

## HOOPER'S MEMORANDUM OF LAW IN SUPPORT
## OF CROSS-MOTION TO DISMISS

Of Counsel:

John P. Campbell, Esq.

## PRELIMINARY STATEMENT

Relying on one of "the most misused" federal statutes, Plaintiffs have hauled Defendant Hooper Evaluations, Inc., a/k/a/ D&D-Hooper Evaluations ("Hooper") into Federal Court alleging a grand conspiracy and RICO violations. *See Goldfine v. Sichenzia*, 118 F. Supp. 2d 393, 394 (S.D.N.Y. 2000). Specifically, Plaintiffs allege that Hooper, along with State Farm Mutual Automobile Insurance Company ("State Farm") and Preferred Consulting Services, Inc. ("Preferred"), are engaged in a massive conspiracy to procure fraudulent independent medical examination reports following No Fault claims by State Farm insureds so as to deny coverage. Plaintiffs go so far as alleging that the Defendants have committed fraud by mere use of the term "independent" medical exam although this term is routinely used by the Federal and State Courts of New York. Despite its length (almost 50 pages), Plaintiffs' Complaint is without specificity and it is entirely unfocused, to the point that it remains what the alleged "conspiracy" really is.

As more thoroughly argued by Defendant State Farm, Plaintiffs fail to plead the elements of a civil RICO claim as a matter of law. Specifically, Plaintiffs (1) fail to plead any of the alleged "frauds" with particularity; (2) fail to plead the requisite "pattern" of racketeering activity; and (3) fail to plead the existence of a racketeering "enterprise." Plaintiffs also fail to properly plead claims for fraud, misrepresentation and deceit. For these reasons, Plaintiffs' Complaint against Hooper must be dismissed.

Plaintiffs has filed a multiple count complaint against State Farm, Hooper and Preferred alleging a Civil RICO 18 U.S.C. § 1962 (c) et seq. claim and Fraud, Misrepresentation and Deceit. Plaintiffs also assert causes of action against State Farm claiming Breach of Good Faith and Fair Dealing, Breach of Contract, and Unjust Enrichment. Plaintiffs do not make these later

claims against Hooper or Preferred. Nevertheless, Hooper joins in the applications of its co-defendants to dismiss the entirety of the Plaintiffs' complaint.

Specifically, Hooper incorporates herein fully and by reference each and every argument raised by its co-defendants in State Farm's motion and Preferred's cross-motion to dismiss. Hooper has joined in the submissions of these arguments in the interest of judicial economy as Plaintiffs' allegations against Hooper are duplicative of at least a portion of those allegations against State Farm and Preferred. However, Hooper reserves its right to reply to any direct opposition arguments offered by the Plaintiffs against Hooper.

## CONCISE STATEMENT OF ASSUMED FACTS

Hooper incorporates herein fully and by reference each and every argument raised by State Farm in its motion to dismiss.

## LEGAL ARGUMENT

### Plaintiffs Fail to Satisfy the Heightened Pleading Standards Applicable to Their Fraud and Civil RICO Claims

Plaintiffs' first claim for relief asserts a Civil RICO 18 U.S.C. § 1962, et seq. claim against State Farm, which is thoroughly briefed in State Farm's Memorandum of Law. Plaintiffs' third claim for relief asserts the exact same Civil RICO 18 U.S.C. § 1962, et seq. claim against Hooper. Plaintiffs' fourth claim for relief asserts a Fraud, Misrepresentation and Deceit claim against State Farm, which is also thoroughly briefed in State Farm's Memorandum of Law. Plaintiffs' sixth claim for relief asserts the exact same claim for Fraud, Misrepresentation and Deceit against Hooper. Accordingly, Hooper incorporates herein fully and by reference each and every argument raised by State Farm in its motion to dismiss, including all those arguments addressing Plaintiffs' failed Civil RICO and Fraud claims.

However, at Legal Argument I.A.2, State Farm argues that "[w]hen a RICO claim is based on mail or wire fraud, the plaintiff must demonstrate reliance, as well as reasonable reliance, on the alleged representation." State Farm offered this argument to the Court upon the well settled 2nd Circuit law as of June 5, 2008 including *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 222 (2nd Cir. 2008); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 106-07 (2d Cir. 2007); *Bank of China, N.Y. Branch v. NBM LLC*, 359 F.3d 171, 176 (2d Cir. 2004); *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2nd Cir. 1997). On June 9, 2008, the Supreme Court decided *John Bridge, et al. v. Phoenix Bond & Indemnity Co., et al.*, : --- S.Ct. ----, 2008 WL 2329761 (U.S. 2008), annexed hereto as Exhibit A.

In *Bridge*, the Court granted certiorari to consider a split among the Circuit Courts, specifically "whether a plaintiff asserting a RICO claim predicated on mail fraud must plead and prove that it relied on the defendant's alleged misrepresentations." *See Bridge* at 2, 4. Ultimately, the Court decided that "a plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations." *See Bridge* at 12. However, the Court did not entirely relieve RICO plaintiffs from the necessity of alleging some form of reliance because "none of this is to say that a RICO plaintiff who alleges injury 'by reason' of a pattern of mail fraud can prevail without showing that *someone* relied on the defendant's misrepresentations." *See Bridge* at 11 (emphasis in original). Therefore, four days after State Farm filed its motion to dismiss, the law it relied upon to demonstrate one of Plaintiffs' many pleading failures was altered. Taking into account the recent changes in law, it is respectfully submitted that plaintiff has failed to establish that anyone relied on the alleged

misrepresentations.  Accordingly, with this one revision, Hooper adopts the arguments raised by State Farm in its motion to dismiss.

Moreover, Plaintiffs' Complaint relies heavily upon misstatements of law to support the Civil RICO and Fraud allegations.  For example, Plaintiffs' allegation that "State Farm pays the IME entity (Hooper and Preferred) a fee in excess of the amount established in the New York No Fault Fee Schedule which is then divided with the doctor, or is paid to the doctor and a portion given back (kickback) to the IME Company" is groundless.  *See* Complaint ¶ 58.  There is *no* fee schedule applicable to health care providers who examine patients for No Fault insurers.  The No Fault law limits the application of fee schedules to certain services, and IMEs are not among them.  *See* N.Y. Ins. Law § 5108(a) (limiting application of fee schedules to services identified in § 5102(a), which does not include IMEs).

Also, Plaintiffs' allegation that "neither the IME Entities nor the healthcare professionals are licensed as Independent Adjusters pursuant to New York Insurance Law Article 21(g)(1)" is a red herring.  *See* Complaint ¶ 59.  Plaintiffs describe Hooper in their Complaint at paragraphs 22 through 37.  Accepting the Plaintiffs' allegations in the complaint as true, Hooper merely "procured healthcare professionals licensed by New York law to evaluate patients concerning the treatment previously rendered by a healthcare provider in the state of New York." *See* Complaint ¶ 36.  Plaintiff also claims that Hooper "adjusted claims by choosing, procuring and negotiating fees for services of the Healthcare providers that provided the IME evaluations and reports." *See* Complaint ¶ 88.  Therefore, plaintiff pleads that Hooper performs administrative tasks.  Yet, entities performing administrative tasks only, such as procuring healthcare professionals to evaluate patients concerning the treatment previously rendered by another healthcare provider, are not required to be licensed as an adjuster.  *See* NY Insurance Dept. GC opinion 01-04-17,

annexed hereto as Exhibit B.  Plaintiffs have not alleged facts sufficient to justify a finding that Hooper was "adjusting" any claim and thus plaintiff's claim must be dismissed.

Further, and perhaps more importantly, plaintiff does not have standing to raise either the "independent adjuster" or "kickback" arguments.  Each of the aforementioned issues raised in plaintiff's lengthy complaint relate to specific statutory requirements.  Neither of those statutes provides for any third-party cause of action.  Instead, the determination as to whether the statutory requirement has been met rests with the governmental agency involved, not this Court, and thus, plaintiffs do not have standing to assert any alleged violation of these statutes.  *See Safir v. United States Lines, Inc.*, 616 F. Supp. 613, 616 (E.D.N.Y. 1985) and *Soc'y of Plastics Indus. v. County of Suffolk*, 77 N.Y.2d 761, 771-774 (N.Y. 1991).  Therefore, Plaintiffs' Complaint must also be dismissed because it relies so heavily upon misstatements of law.

## CONCLUSION

For the foregoing reasons, and all those reasons set forth in State Farm's Motion to Dismiss, Hooper respectfully requests that the Court grant its cross-motion, pursuant to Fed. R. Civ. P. 9(b), 12(b)(1), and 12(b)(6), and dismiss Plaintiffs' Third (Civil RICO 18 U.S.C. § 1962, et seq.) and Sixth (Fraud, Misrepresentation and Deceit) claims against Hooper, and dismissing any remaining state law claims for lack of federal jurisdiction.

Dated:  Morristown, New Jersey  
       June 16, 2008

Respectfully submitted,  
SCHENCK, PRICE, SMITH & KING, LLP

/s/ John P. Campbell (JC-8746)_____  
John P. Campbell (JC-8746)  
305 Broadway, Suite 900  
New York, New York 10007  
(212) 822-1494  
*Attorneys for Defendant Hooper Evaluations,*  
*Inc., a/k/a D&D-Hooper Evaluations*

*JPC/00971285*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been served upon all counsel of record by electronic notice from the Court's CM/ECF system on this 16th day of June, 2008.

SCHENCK, PRICE, SMITH & KING, LLP

/s/ John P. Campbell (JC-8746)_____
John P. Campbell (JC-8746)
305 Broadway, Suite 900
New York, New York 10007
(212) 822-1494
*Attorneys for Defendant Hooper Evaluations, Inc., a/k/a D&D-Hooper Evaluations*

*EXHIBIT A*

Westlaw.

**H**Bridge v. PhoenixBond & Indem. Co.
U.S.,2008.
Only the Westlaw citation is currently available.
Supreme Court of the United States
John **BRIDGE** et al., Petitioners,
v.
**PHOENIXBOND** & INDEMNITY CO. et al.
**No. 07-210.**

Argued April 14, 2008.
Decided June 9, 2008.

**Background:** Regular bidders at county's auctions of tax liens sued competitor and its principal under Racketeer Influenced and Corrupt Organizations Act (RICO), alleging that competitor had engaged in pattern of mail fraud by lying to county about its violating county's single simultaneous bidder rule. The United States District Court for the Northern District of Illinois, James F. Holderman, Chief Judge, 2005 WL 3527232, dismissed for lack of standing, and bidders appealed. The United States Court Of Appeals For The Seventh Circuit, 477 F.3d 928, reversed and remanded. Certiorari was granted.

**Holding:** The Supreme Court, Justice Thomas, held that bidders were not required to show that they relied on defendant's alleged misrepresentations to the county; abrogating *VanDenBroeck v. CommonPoint Mortgage Co.,* 210 F.3d 696 (C.A.6 2000); *Sikes v. Teleline, Inc.,* 281 F.3d 1350 (C.A.11 2002).

Affirmed.

**[1] Federal Courts 170B ⟜797**

170B Federal Courts
  170BVIII Courts of Appeals
    170BVIII(K) Scope, Standards, and Extent
      170BVIII(K)3 Presumptions
        170Bk797 k. Dismissal. Most Cited Cases
On appeal from grant of motion to dismiss, the Court of Appeals accepts as true all of the factual allegations contained in the complaint.

**[2] Racketeer Influenced and Corrupt Organizations 319H ⟜59**

319H Racketeer Influenced and Corrupt Organizations
  319HI Federal Regulation
    319HI(B) Civil Remedies and Proceedings
      319Hk56 Persons Entitled to Sue or Recover
        319Hk59 k. Business, Property, or Proprietary Injury; Personal Injuries. Most Cited Cases

**Racketeer Influenced and Corrupt Organizations 319H ⟜62**

319H Racketeer Influenced and Corrupt Organizations
  319HI Federal Regulation
    319HI(B) Civil Remedies and Proceedings
      319Hk56 Persons Entitled to Sue or Recover
        319Hk62 k. Causal Relationship; Direct or Indirect Injury. Most Cited Cases
Racketeer Influenced and Corrupt Organizations Act (RICO) provides a private right of action for treble damages to any person injured in his business or property by reason of the conduct of a qualifying enterprise's affairs through a pattern of acts indictable as mail fraud. 18 U.S.C.A. §§ 1341, 1964(c).

**[3] Postal Service 306 ⟜35(2)**

306 Postal Service
  306III Offenses Against Postal Laws
    306k35 Use of Mails to Defraud
      306k35(2) k. Nature and Elements of Offense in General. Most Cited Cases

**Postal Service 306 ⟜35(8)**

306 Postal Service
  306III Offenses Against Postal Laws
    306k35 Use of Mails to Defraud
      306k35(8) k. Effectiveness of Matter Mailed to Further Fraud. Most Cited Cases
The gravamen of the offense of mail fraud is the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

scheme to defraud, and any mailing that is incident to an essential part of the scheme satisfies the mailing element. 18 U.S.C.A. § 1341.

**[4]   Racketeer   Influenced   and   Corrupt Organizations 319H ☞10**

319H   Racketeer   Influenced   and   Corrupt Organizations
   319HI Federal Regulation
      319HI(A) In General
         319Hk4 Racketeering or Criminal Activity
            319Hk10 k. Fraud in General. Most Cited Cases
Plaintiff asserting a civil Racketeer Influenced and Corrupt Organizations Act (RICO) claim predicated on mail fraud need not show as an element of its claim that it relied on the defendant's alleged misrepresentations; abrogating *VanDenBroeck v. CommonPoint Mortgage Co.,* 210 F.3d 696 (C.A.6 2000); *Sikes v. Teleline, Inc.,* 281 F.3d 1350 (C.A.11 2002). 18 U.S.C.A. §§ 1341, 1964(c).

**[5] Postal Service 306 ☞35(8)**

306 Postal Service
   306III Offenses Against Postal Laws
      306k35 Use of Mails to Defraud
         306k35(8) k. Effectiveness of Matter Mailed to Further Fraud. Most Cited Cases

**Racketeer Influenced and Corrupt Organizations 319H ☞10**

319H   Racketeer   Influenced   and   Corrupt Organizations
   319HI Federal Regulation
      319HI(A) In General
         319Hk4 Racketeering or Criminal Activity
            319Hk10 k. Fraud in General. Most Cited Cases
Using the mail to execute or attempt to execute a scheme to defraud is indictable as mail fraud, and hence a predicate act of racketeering under Racketeer Influenced and Corrupt Organizations Act (RICO), even if no one relied on any misrepresentation. 18 U.S.C.A. §§ 1341, 1961(1)(B).

**[6]   Racketeer   Influenced   and   Corrupt Organizations 319H ☞95**

319H   Racketeer   Influenced   and   Corrupt Organizations
   319HI Federal Regulation
      319HI(C)   Criminal   Remedies   and Proceedings
         319Hk92 Evidence
            319Hk95 k. Weight and Sufficiency.
Most Cited Cases
No showing of reliance is required to establish that a person has violated Racketeer Influenced and Corrupt Organizations Act's (RICO) criminal prohibitions by conducting the affairs of an enterprise through a pattern of racketeering activity consisting of acts of mail fraud. 18 U.S.C.A. § 1962(c).

**[7]   Racketeer   Influenced   and   Corrupt Organizations 319H ☞10**

319H   Racketeer   Influenced   and   Corrupt Organizations
   319HI Federal Regulation
      319HI(A) In General
         319Hk4 Racketeering or Criminal Activity
            319Hk10 k. Fraud in General. Most Cited Cases
When Congress established in the Racketeer Influenced and Corrupt Organizations Act (RICO) a civil cause of action predicated on a violation of the mail fraud statute, it did not incorporate reliance element of common-law fraud, since mail fraud was a statutory offense unknown to the common law. 18 U.S.C.A. §§ 1341, 1964(c).

**[8]   Racketeer   Influenced   and   Corrupt Organizations 319H ☞62**

319H   Racketeer   Influenced   and   Corrupt Organizations
   319HI Federal Regulation
      319HI(B) Civil Remedies and Proceedings
         319Hk56 Persons Entitled to Sue or Recover
            319Hk62 k. Causal Relationship; Direct or Indirect Injury. Most Cited Cases
Plaintiff asserting a civil Racketeer Influenced and Corrupt Organizations Act (RICO) claim predicated on mail fraud need not show that it relied on the defendant's misrepresentations in order to establish the requisite element of causation. 18 U.S.C.A. §§ 1341, 1964(c).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----
Page 4

--- S.Ct. ----, 2008 WL 2329761 (U.S.)

**(Cite as: --- S.Ct. ----, 2008 WL 2329761 (U.S.))**

[9] Fraud 184 ☞20

184 Fraud
   184I Deception Constituting Fraud, and Liability
Therefor
      184k19 Reliance on Representations and
Inducement to Act
         184k20 k. In General. Most Cited Cases

**Torts 379 ☞106**

379 Torts
   379I In General
      379k106 k. Nature and Elements of Torts in
General. Most Cited Cases
Reliance is not a general limitation on civil recovery
in tort; it is a specialized condition that happens to
have grown up with common law fraud.

[10] Fraud 184 ☞25

184 Fraud
   184I Deception Constituting Fraud, and Liability
Therefor
      184k25 k. Injury and Causation. Most Cited
Cases
While first-party reliance is an element of a common-
law fraud claim, the legal injury from a fraudulent
misrepresentation is not limited to only those who
rely on it.

[11] Action 13 ☞3

13 Action
   13I Grounds and Conditions Precedent
      13k3 k. Statutory Rights of Action. Most
Cited Cases
It is not for the judiciary to eliminate the private
action in situations where Congress has provided it.

*Syllabus*[FN*]

   FN* The syllabus constitutes no part of the
opinion of the Court but has been prepared
by the Reporter of Decisions for the
convenience of the reader. See *United States
v. Detroit Timber & Lumber Co.,* 200 U.S.
321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

*1 Each year the Cook County Treasurer's Office
holds a public auction to sell its tax liens on
delinquent taxpayers' property. To prevent any one
buyer from obtaining a disproportionate share of the
liens, the county adopted the "Single, Simultaneous
Bidder Rule" (Rule), which requires each buyer to
submit bids in its own name, prohibits a buyer from
using "apparent agents, employees, or related
entities" to submit simultaneous bids for the same
parcel, and requires a registered bidder to submit a
sworn affidavit affirming its compliance with the
Rule. Petitioners and respondents regularly
participate in the tax sales. Respondents filed suit,
alleging that petitioners fraudulently obtained a
disproportionate share of liens by filing false
compliance attestations. As relevant here, they claim
that petitioners violated and conspired to violate the
Racketeer Influenced and Corrupt Organizations Act
(RICO) through a pattern of racketeering activity
involving mail fraud, which occurred when
petitioners sent property owners various notices
required by Illinois law. The District Court dismissed
the RICO claims for lack of standing, finding that
respondents were not protected by the mail fraud
statute because they did not receive the alleged
misrepresentations. Reversing, the Seventh Circuit
based standing on the injury respondents suffered
when they lost the chance to obtain more liens, and
found that respondents had sufficiently alleged
proximate cause because they were immediately
injured by petitioners' scheme. The court also
rejected petitioners' argument that respondents are
not entitled to relief under RICO because they had
not received, and therefore had not relied on, any
false statements.

*Held:* A plaintiff asserting a RICO claim predicated
on mail fraud need not show, either as an element of
its claim or as a prerequisite to establishing
proximate causation, that it relied on the defendant's
alleged misrepresentations. Pp. ---- - ----.

(a) In 18 U.S.C. § 1964(c), RICO provides a private
right of action for treble damages to "[a]ny person
injured in his business or property by reason of a
violation," as pertinent here, of § 1962(c), which
makes it "unlawful for any person employed by or
associated with" a qualifying enterprise "to conduct
or participate ... in the conduct of such enterprise's
affairs through a pattern of racketeering activity,"

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

including "mail fraud," § 1961(1)(B). Mail fraud, in turn, occurs whenever a person, "having devised or intending to devise any scheme or artifice to defraud," uses the mail "for the purpose of executing such scheme or artifice." § 1341. The gravamen of the offense is the scheme to defraud, and any " 'mailing ... incident to an essential part of the scheme'... satisfies the mailing element," *Schmuck v. United States,* 489 U.S. 705, 712, 109 S.Ct. 1443, 103 L.Ed.2d 734, even if the mailing "contain[s] no false information," *id.,* at 715, 109 S.Ct. 1443. Once the relationship among these statutory provisions is understood, respondents' theory of the case is straightforward. Petitioners nonetheless argue that because the alleged pattern of racketeering activity is predicated on mail fraud, respondents must show that they relied on petitioners' fraudulent misrepresentations, which they cannot do because the misrepresentations were made to the county. Nothing on the statute's face imposes such a requirement. Using the mail to execute or attempt to execute a scheme to defraud is indictable as mail fraud, and hence a predicate racketeering act under RICO, even if no one relied on any misrepresentation, see *Neder v. United States,* 527 U.S. 1, 24-25, 119 S.Ct. 1827, 144 L.Ed.2d 35; and one can conduct the affairs of a qualifying enterprise through a pattern of such acts without anyone relying on a fraudulent misrepresentation. Thus, no reliance showing is required to establish that a person has violated § 1962(c) by conducting an enterprise's affairs through a pattern of racketeering activity predicated on mail fraud. Nor can a first-party reliance requirement be derived from § 1964(c), which, by providing a right of action to "[a]ny person" injured by a violation of § 1962, suggests a breadth of coverage not easily reconciled with an implicit first-party reliance requirement. Moreover, a person can be injured "by reason of" a pattern of mail fraud even if he has not relied on any misrepresentations. For example, accepting respondents' allegations as true, they were harmed by petitioners' scheme when they lost valuable liens they otherwise would have been awarded. Pp. ---- - ----.

(b) None of petitioners' arguments-that under the "common-law meaning" rule, Congress should be presumed to have made reliance an element of a civil RICO claim predicated on a violation of the mail fraud statute; that a plaintiff bringing a RICO claim based on mail fraud must show reliance on the defendant's misrepresentations in order to establish

proximate cause; and that RICO should be interpreted to require first-party reliance for fraud-based claims in order to avoid the "overfederalization" of traditional state-law claims-persuades this Court to read a first-party reliance requirement into a statute that by its terms suggests none. Pp. ---- - ----.

*2477 F.3d 928, affirmed.

THOMAS, J., delivered the opinion for a unanimous Court.

Theodore M. Becker, Chicago, IL, for petitioners.
David W. DeBruin, Washington, DC, for respondents.
Eric D. Miller, for the United States as amicus curiae, by special leave of the Court, supporting the respondents.
Peter Buscemi, Joseph Brooks, Michelle Park Chiu, Morgan, Lewis & Bockius LLP, Washington, D.C., Theodore M. Becker, Counsel of Record, James E. Bayles, Jr., Morgan, Lewis & Bockius LLP, Chicago, Illinois, for Petitioners.
Lowell E. Sachnoff, David C. Bohan, John W. Moynihan, Reed Smith LLP, Chicago, IL, Jonathan L. Marks, Katten Muchin Rosenmann LLP, Chicago, IL, David W. DeBruin, Counsel of Record, Ian Heath Gershengorn, Matthew S. Hellman, Carrie F. Apfel, Sharmila Sohoni, Jenner & Block LLP, Washington, DC, for Respondents. For U.S. Supreme Court briefs, see: 2008 WL 466088 (Pet.Brief) 2008 WL 685064 (Resp.Brief) 2008 WL 976385 (Reply.Brief)

Justice THOMAS delivered the opinion of the Court.
The Racketeer Influenced and Corrupt Organizations Act (RICO or Act), 18 U.S.C. §§ 1961-1968, provides a private right of action for treble damages to "[a]ny person injured in his business or property by reason of a violation" of the Act's criminal prohibitions. § 1964(c). The question presented in this case is whether a plaintiff asserting a RICO claim predicated on mail fraud must plead and prove that it relied on the defendant's alleged misrepresentations. Because we agree with the Court of Appeals that a showing of first-party reliance is not required, we affirm.

I

[1] Each year the Cook County, Illinois, Treasurer's Office holds a public auction at which it sells tax liens it has acquired on the property of delinquent

--- S.Ct. ----

--- S.Ct. ----, 2008 WL 2329761 (U.S.)                                              Page 6

**(Cite as: --- S.Ct. ----, 2008 WL 2329761 (U.S.))**

taxpayers.[FN1]Prospective buyers bid on the liens, but not in cash amounts. Instead, the bids are stated as percentage penalties the property owner must pay the winning bidder in order to clear the lien. The bidder willing to accept the lowest penalty wins the auction and obtains the right to purchase the lien in exchange for paying the outstanding taxes on the property. The property owner may then redeem the property by paying the lienholder the delinquent taxes, plus the penalty established at the auction and an additional 12% penalty on any taxes subsequently paid by the lienholder. If the property owner does not redeem the property within the statutory redemption period, the lienholder may obtain a tax deed for the property, thereby in effect purchasing the property for the value of the delinquent taxes.

> FN1. Because this case arises from the District Court's grant of petitioners' motion to dismiss, we "accept as true all of the factual allegations contained in [respondents'] complaint." *Erickson v. Pardus,* 551 U.S. ----, ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007).

Because property acquired in this manner can often be sold at a significant profit over the amount paid for the lien, the auctions are marked by stiff competition. As a result, most parcels attract multiple bidders willing to accept the lowest penalty permissible-0%, that is to say, no penalty at all. (Perhaps to prevent the perverse incentive taxpayers would have if they could redeem their property from a winning bidder for less than the amount of their unpaid taxes, the county does not accept negative bids.) The lower limit of 0% creates a problem: Who wins when the bidding results in a tie? The county's solution is to allocate parcels "on a rotational basis" in order to ensure that liens are apportioned fairly among 0% bidders. App. 18.

**\*3** But this creates a perverse incentive of its own: Bidders who, in addition to bidding themselves, send agents to bid on their behalf will obtain a disproportionate share of liens. To prevent this kind of manipulation, the county adopted the "Single, Simultaneous Bidder Rule," which requires each "tax buying entity" to submit bids in its own name and prohibits it from using "apparent agents, employees, or related entities" to submit simultaneous bids for the same parcel.[FN2]App. 67. Upon registering for an

auction, each bidder must submit a sworn affidavit affirming that it complies with the Single, Simultaneous Bidder Rule.

> FN2. The Single, Simultaneous Bidder Rule provides that "one tax buying entity (principal) may not have its/his/her/their actual or apparent agents, employees, or related entities, directly or indirectly register under multiple registrations for the *intended or perceived* purpose of having more than one person bidding at the tax sale at the same time for the *intended or perceived* purpose of increasing the principal's likelihood of obtaining a successful bid on a parcel."App. 67. The rule defines "Related Bidding Entity" as "any individual, corporation, partnership, joint venture, limited liability company, business organization, or other entity that has a shareholder, partner, principal, officer, general partner or other person or entity having an ownership interest in common with, or contractual relationship with, any other registrant."*Ibid.* It further provides that "[t]he determination of whether registered entities are related, so as to prevent the entities from bidding at the same time, is in the *sole and exclusive discretion* of the Cook County Treasurer or her designated representatives."*Ibid.*

Petitioners and respondents are regular participants in Cook County's tax sales. In July 2005, respondents filed a complaint in the United States District Court for the Northern District of Illinois, contending that petitioners had fraudulently obtained a disproportionate share of liens by violating the Single, Simultaneous Bidder Rule at the auctions held from 2002 to 2005. According to respondents, petitioner Sabre Group, LLC, and its principal Barrett Rochman arranged for related firms to bid on Sabre Group's behalf and directed them to file false attestations that they complied with the Single, Simultaneous Bidder Rule. Having thus fraudulently obtained the opportunity to participate in the auction, the related firms collusively bid on the same properties at a 0% rate. As a result, when the county allocated liens on a rotating basis,[FN3] it treated the related firms as independent entities, allowing them collectively to acquire a greater number of liens than

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----
--- S.Ct. ----, 2008 WL 2329761 (U.S.)                                Page 7
**(Cite as: --- S.Ct. ----, 2008 WL 2329761 (U.S.))**

would have been granted to a single bidder acting alone. The related firms then purchased the liens and transferred the certificates of purchase to Sabre Group. In this way, respondents allege, petitioners deprived them and other bidders of their fair share of liens and the attendant financial benefits.

> FN3. Respondents' complaint does not elaborate on the county's rotational system. The Court of Appeals described it as follows: "If X bids 0% on ten parcels, and each parcel attracts five bids at that penalty rate, then the County awards X two of the ten parcels. Winners share according to the ratio of their bids to other identical bids."477 F.3d 928, 929 (C.A.7 2007). Petitioners object that this description is not supported by the record and inappropriately "inject[s] into the case an element of mathematical certainty that is missing from the complaint itself."Reply Brief for Petitioners 20. While a precise understanding of the county's system may be necessary to calculate respondents' damages, nothing in our disposition turns on this issue. For present purposes, it suffices that respondents allege they "suffered the loss of property related to the liens they would have been able to acquire, and the profits flowing therefrom, had [petitioners] not implemented their scheme and acquired liens in excess of their appropriate share through their violation of the County Rule."App. 50.

Respondents' complaint contains five counts. Counts I-IV allege that petitioners violated and conspired to violate RICO by conducting their affairs through a pattern of racketeering activity involving numerous acts of mail fraud. In support of their allegations of mail fraud, respondents assert that petitioners "mailed or caused to be mailed hundreds of mailings in furtherance of the scheme," App. 49, when they sent property owners various notices required by Illinois law. Count V alleges a state-law claim of tortious interference with prospective business advantage.

On petitioners' motion, the District Court dismissed respondents' RICO claims for lack of standing. It observed that "[o]nly [respondents] and other competing buyers, as opposed to the Treasurer or the

property owners, would suffer a financial loss from a scheme to violate the Single, Simultaneous Bidder Rule."App. to Pet. for Cert. 17a. But it concluded that respondents "are not in the class of individuals protected by the mail fraud statute, and therefore are not within the 'zone of interests' that the RICO statute protects," because they "were not recipients of the alleged misrepresentations and, at best were indirect victims of the alleged fraud."*Id.*, at 18a.The District Court declined to exercise supplemental jurisdiction over respondents' tortious-interference claim and dismissed it without prejudice.

**\*4** The Court of Appeals for the Seventh Circuit reversed. It first concluded that "[s]tanding is not a problem in this suit" because plaintiffs suffered a "real injury" when they lost the valuable chance to acquire more liens, and because "that injury can be redressed by damages."477 F.3d 928, 930 (2007). The Court of Appeals next concluded that respondents had sufficiently alleged proximate cause under _Holmes v. Securities Investor Protection Corporation,_ 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992), and _Anza v. Ideal Steel Supply Corp.,_ 547 U.S. 451, 126 S.Ct. 1991, 164 L.Ed.2d 720 (2006), because they (along with other losing bidders) were "immediately injured" by petitioners' scheme. 477 F.3d, at 930-932.Finally, the Court of Appeals rejected petitioners' argument that respondents are not entitled to relief under RICO because they did not receive, and therefore did not rely on, any false statements: "A scheme that injures D by making false statements through the mail to E is mail fraud, and actionable by D through RICO if the injury is not derivative of someone else's."*Id.*, at 932.

With respect to this last holding, the Court of Appeals acknowledged that courts have taken conflicting views. By its count, "[t]hree other circuits that have considered this question agree ... that the direct *victim* may recover through RICO whether or not it is the direct *recipient* of the false statements,"*ibid.*(citing _Mid Atlantic Telecom, Inc. v. Long Distance Servs., Inc.,_ 18 F.3d 260, 263-264 (C.A.4 1994); _Systems Management, Inc. v. Loiselle,_ 303 F.3d 100, 103-104 (C.A.1 2002); _Ideal Steel Supply Corp. v. Anza,_ 373 F.3d 251, 263 (C.A.2 2004)), whereas two Circuits hold that the plaintiff must show that it in fact relied on the defendant's misrepresentations, 477 F.3d, at 932 (citing _VanDenBroeck v. CommonPoint Mortgage Co.,_ 210

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

F.3d 696, 701 (C.A.6 2000); *Sikes v. Teleline, Inc.,* 281 F.3d 1350, 1360-1361 (C.A.11 2002)). Compare also *Sandwich Chef of Texas, Inc. v. Reliance Nat'l Indemnity Ins. Co.,* 319 F.3d 205, 223 (C.A.5 2003) (recognizing "a narrow exception to the requirement that the plaintiff prove direct reliance on the defendant's fraudulent predicate act ... when the plaintiff can demonstrate injury as a direct and contemporaneous result of a fraud committed against a third party"), with *Appletree Square I, L.P. v. W.R. Grace & Co.,* 29 F.3d 1283, 1286-1287 (C.A.8 1994) (requiring the plaintiff to show that it detrimentally relied on the defendant's misrepresentations).

We granted certiorari, 552 U.S. ----, 128 S.Ct. 829, 169 L.Ed.2d 625 (2008), to resolve the conflict among the Courts of Appeals on "the substantial question," *Anza,* 547 U.S., at 461, 126 S.Ct. 1991, whether first-party reliance is an element of a civil RICO claim predicated on mail fraud.[FN4]

> FN4. The Court considered a civil RICO claim predicated on mail fraud in its recent decision in *Anza,* 547 U.S. 451, 126 S.Ct. 1991, 164 L.Ed.2d 720.There the Court held that proximate cause is a condition of recovery under 18 U.S.C. § 1962(c). The Court did not address the question whether reliance by the plaintiff is a required element of a RICO claim, the matter now before us. Cf. 547 U.S., at 475-478, 126 S.Ct. 1991 (THOMAS, J., concurring in part and dissenting in part) (reaching the question and concluding that reliance is not an element of a civil RICO claim based on mail fraud).

### II

**\*5** We begin by setting forth the applicable statutory provisions. RICO's private right of action is contained in 18 U.S.C. § 1964(c), which provides in relevant part that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."Section 1962 contains RICO's criminal prohibitions. Pertinent here is § 1962(c), which makes it "unlawful for any person employed by or

associated with" an enterprise engaged in or affecting interstate or foreign commerce "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."The term "racketeering activity" is defined to include a host of so-called predicate acts, including "any act which is indictable under ...section 1341 (relating to mail fraud)."§ 1961(1)(B).

[2][3] The upshot is that RICO provides a private right of action for treble damages to any person injured in his business or property by reason of the conduct of a qualifying enterprise's affairs through a pattern of acts indictable as mail fraud. Mail fraud, in turn, occurs whenever a person, "having devised or intending to devise any scheme or artifice to defraud," uses the mail "for the purpose of executing such scheme or artifice or attempting so to do."§ 1341. The gravamen of the offense is the scheme to defraud, and any "mailing that is incident to an essential part of the scheme satisfies the mailing element,"*Schmuck v. United States,* 489 U.S. 705, 712, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989) (citation and internal quotation marks omitted), even if the mailing itself "contain[s] no false information," *id.,* at 715, 109 S.Ct. 1443.

[4] Once the relationship among these statutory provisions is understood, respondents' theory of the case is straightforward. They allege that petitioners devised a scheme to defraud when they agreed to submit false attestations of compliance with the Single, Simultaneous Bidder Rule to the county. In furtherance of this scheme, petitioners used the mail on numerous occasions to send the requisite notices to property owners. Each of these mailings was an "act which is indictable" as mail fraud, and together they constituted a "pattern of racketeering activity." By conducting the affairs of their enterprise through this pattern of racketeering activity, petitioners violated § 1962(c). As a result, respondents lost the opportunity to acquire valuable liens. Accordingly, respondents were injured in their business or property by reason of petitioners' violation of § 1962(c), and RICO's plain terms give them a private right of action for treble damages.

Petitioners argue, however, that because the alleged pattern of racketeering activity consisted of acts of mail fraud, respondents must show that they relied on

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:08-cv-01342-JS-WDW   Document 22-2   Filed 06/16/08   Page 17 of 25 PageID #: 285

petitioners' fraudulent misrepresentations. This they cannot do, because the alleged misrepresentations-petitioners' attestations of compliance with the Single, Simultaneous Bidder Rule-were made to the county, not respondents. The *county* may well have relied on petitioners' misrepresentations when it permitted them to participate in the auction, but *respondents,* never having received the misrepresentations, could not have done so. Indeed, respondents do not even allege that they relied on petitioners' false attestations. Thus, petitioners submit, they fail to state a claim under RICO.

**\*6[5]** If petitioners' proposed requirement of first-party reliance seems to come out of nowhere, there is a reason: Nothing on the face of the relevant statutory provisions imposes such a requirement. Using the mail to execute or attempt to execute a scheme to defraud is indictable as mail fraud, and hence a predicate act of racketeering under RICO, even if no one relied on any misrepresentation. See *Neder v. United States,* 527 U.S. 1, 24-25, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) ("The common-law requirement[t] of 'justifiable reliance' ... plainly ha[s] no place in the [mail, wire, or bank] fraud statutes"). And one can conduct the affairs of a qualifying enterprise through a pattern of such acts without anyone relying on a fraudulent misrepresentation.

[6] It thus seems plain-and indeed petitioners do not dispute-that no showing of reliance is required to establish that a person has violated § 1962(c) by conducting the affairs of an enterprise through a pattern of racketeering activity consisting of acts of mail fraud. See *Anza,* 547 U.S., at 476, 126 S.Ct. 1991 (THOMAS, J., concurring in part and dissenting in part) ("Because an individual can commit an indictable act of mail or wire fraud even if no one relies on his fraud, he can engage in a pattern of racketeering activity, in violation of § 1962, without proof of reliance"). If reliance is required, then, it must be by virtue of § 1964(c), which provides the right of action. But it is difficult to derive a first-party reliance requirement from § 1964(c), which states simply that "[a]ny person injured in his business or property by reason of a violation of section 1962" may sue for treble damages. The statute provides a right of action to "[a]ny person" injured by the violation, suggesting a breadth of coverage not easily reconciled with an implicit requirement that the plaintiff show reliance

in addition to injury in his business or property.

Moreover, a person can be injured "by reason of" a pattern of mail fraud even if he has not relied on any misrepresentations. This is a case in point. Accepting their allegations as true, respondents clearly were injured by petitioners' scheme: As a result of petitioners' fraud, respondents lost valuable liens they otherwise would have been awarded. And this is true even though they did not rely on petitioners' false attestations of compliance with the county's rules. Or, to take another example, suppose an enterprise that wants to get rid of rival businesses mails misrepresentations about them to their customers and suppliers, but not to the rivals themselves. If the rival businesses lose money as a result of the misrepresentations, it would certainly seem that they were injured in their business "by reason of" a pattern of mail fraud, even though they never received, and therefore never relied on, the fraudulent mailings. Yet petitioners concede that, on their reading of § 1964(c), the rival businesses would have no cause of action under RICO, Tr. of Oral Arg. 4, even though they were the primary and intended victims of the scheme to defraud.

Lacking textual support for this counterintuitive position, petitioners rely instead on a combination of common-law rules and policy arguments in an effort to show that Congress should be presumed to have made first-party reliance an element of a civil RICO claim based on mail fraud. None of petitioners' arguments persuades us to read a first-party reliance requirement into a statute that by its terms suggests none.

### III

#### A

**\*7[7]** Petitioners first argue that RICO should be read to incorporate a first-party reliance requirement in fraud cases "under the rule that Congress intends to incorporate the well-settled meaning of the common-law terms it uses."*Neder, supra,* at 23, 119 S.Ct. 1827.It has long been settled, they contend, that only the recipient of a fraudulent misrepresentation may recover for common-law fraud, and that he may do so "if, but only if ... he relies on the misrepresentation in acting or refraining from action."Restatement (Second) of Torts § 537 (1977). Given this

background rule of common law, petitioners maintain, Congress should be presumed to have adopted a first-party reliance requirement when it created a civil cause of action under RICO for victims of mail fraud.

In support of this argument, petitioners point to our decision in *Beck v. Prupis,* 529 U.S. 494, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000). There, we considered the scope of RICO's private right of action for violations of § 1962(d), which makes it "unlawful for any person to conspire to violate" RICO's criminal prohibitions. The question presented was "whether a person injured by an overt act in furtherance of a conspiracy may assert a civil RICO conspiracy claim under § 1964(c) for a violation of § 1962(d) even if the overt act does not constitute 'racketeering activity.' "*Id.,* at 500, 120 S.Ct. 1608.Answering this question in the negative, we held that "injury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO is not sufficient to give rise to a cause of action under § 1964(c) for a violation of § 1962(d)."*Id.,* at 505, 120 S.Ct. 1608 (citation omitted). In so doing, we "turn[ed] to the well-established common law of civil conspiracy."*Id.,* at 500, 120 S.Ct. 1608.Because it was "widely accepted" by the time of RICO's enactment "that a plaintiff could bring suit for civil conspiracy only if he had been injured by an act that was itself tortious,"*id.,* at 501, 120 S.Ct. 1608, we presumed "that when Congress established in RICO a civil cause of action for a person 'injured ... by reason of' a 'conspir[acy],' it meant to adopt these well-established common-law civil conspiracy principles."*Id.,* at 504, 120 S.Ct. 1608 (quoting §§ 1964(c), 1962(d); alterations in original). We specifically declined to rely on the law of criminal conspiracy, relying instead on the law of civil conspiracy:

> "We have turned to the common law of criminal conspiracy to define what constitutes a violation of § 1962(d), see *Salinas v. United States,* 522 U.S. 52, 63-65[, 118 S.Ct. 469, 139 L.Ed.2d 352] (1997), a mere violation being all that is necessary for criminal liability. This case, however, does not present simply the question of what constitutes a violation of § 1962(d), but rather the meaning of a civil cause of action for private injury by reason of such a violation. In other words, our task is to interpret §§ 1964(c) and 1962(d) in conjunction,

rather than § 1962(d) standing alone. The obvious source in the common law for the combined meaning of these provisions is the law of civil conspiracy."*Id.,* at 501, n. 6, 120 S.Ct. 1608.

**\*8** Petitioners argue that, as in *Beck,* we should look to the common-law meaning of civil fraud in order to give content to the civil cause of action § 1964(c) provides for private injury by reason of a violation of § 1962(c) based on a pattern of mail fraud. The analogy to *Beck,* however, is misplaced. The critical difference between *Beck* and this case is that in § 1962(d) Congress used a term-"conspir[acy]"-that had a settled common-law meaning, whereas Congress included no such term in § 1962(c).Section 1962(c) does not use the term "fraud"; nor does the operative language of § 1961(1)(B), which defines "racketeering activity" to include "any act which is indictable under ...section 1341."And the indictable act under § 1341 is not the fraudulent misrepresentation, but rather the use of the mails with the purpose of executing or attempting to execute a scheme to defraud. In short, the key term in § 1962(c)-"racketeering activity"-is a *defined* term, and Congress defined the predicate act not as fraud *simpliciter,* but mail fraud-a statutory offense unknown to the common law. In these circumstances, the presumption that Congress intends to adopt the settled meaning of common-law terms has little pull. Cf. *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.,* 552 U.S. ----, ----, 128 S.Ct. 761, 773, 169 L.Ed.2d 627 (2008) (rejecting the argument that § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), incorporates common-law fraud). There is simply no "reason to believe that Congress would have defined 'racketeering activity' to include acts indictable under the mail and wire fraud statutes, if it intended fraud-related acts to be predicate acts under RICO only when those acts would have been actionable under the common law."*Anza,* 547 U.S., at 477-478, 126 S.Ct. 1991 (THOMAS, J., concurring in part and dissenting in part).

Nor does it help petitioners' cause that here, as in *Beck,* the question is not simply "what constitutes a violation of § 1962[ (c) ], but rather the meaning of a civil cause of action for private injury by reason of such a violation."529 U.S., at 501, n. 6, 120 S.Ct. 1608.To be sure, *Beck* held that a plaintiff cannot state a civil claim for conspiracy under § 1964(c)

merely by showing a violation of § 1962(d) and a resulting injury. But in so doing, *Beck* relied not only on the fact that the term "conspiracy" had a settled common-law meaning, but also on the well-established common-law understanding of what it means to be injured by a conspiracy for purposes of bringing a civil claim for damages. See *id.,* at 501-504, 120 S.Ct. 1608. No comparable understanding exists with respect to injury caused by an enterprise conducting its affairs through a pattern of acts indictable as mail fraud. And even the common-law understanding of injury caused by fraud does not support petitioners' argument. As discussed *infra,* at ---- - ----, the common law has long recognized that plaintiffs can recover in a variety of circumstances where, as here, their injuries result directly from the defendant's fraudulent misrepresentations to a third party.

For these reasons, we reject petitioners' contention that the "common-law meaning" rule dictates that reliance by the plaintiff is an element of a civil RICO claim predicated on a violation of the mail fraud statute. Congress chose to make mail fraud, not common-law fraud, the predicate act for a RICO violation. And "the mere fact that the predicate acts underlying a particular RICO violation happen to be fraud offenses does not mean that reliance, an element of common-law fraud, is also incorporated as an element of a civil RICO claim."*Anza, supra,* at 476, 126 S.Ct. 1991 (THOMAS, J., concurring in part and dissenting in part).

**B**

**\*9[8]** Petitioners next argue that even if Congress did not make first-party reliance an element of a RICO claim predicated on mail fraud, a plaintiff who brings such a claim must show that it relied on the defendant's misrepresentations in order to establish the requisite element of causation. In *Holmes,* we recognized that § 1964(c)'s "language can, of course, be read to mean that a plaintiff is injured 'by reason of' a RICO violation, and therefore may recover, simply on showing that the defendant violated § 1962, the plaintiff was injured, and the defendant's violation was a 'but for' cause of plaintiff's injury."503 U.S., at 265-266, 112 S.Ct. 1311 (footnote omitted). We nonetheless held that not "all factually injured plaintiffs" may recover under § 1964(c).*Id.,* at 266, 112 S.Ct. 1311. Because Congress

modeled § 1964(c) on other provisions that had been interpreted to "requir[e] a showing that the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well," we concluded that § 1964(c) likewise requires the plaintiff to establish proximate cause in order to show injury "by reason of" a RICO violation. *Id.,* at 268, 112 S.Ct. 1311.

Proximate cause, we explained, is a flexible concept that does not lend itself to " 'a black-letter rule that will dictate the result in every case.' "*Id.,* at 272, n. 20, 112 S.Ct. 1311 (quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters,* 459 U.S. 519, 536, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983)). Instead, we "use[d] 'proximate cause' to label generically the judicial tools used to limit a person's responsibility for the consequences of that person's own acts,"*Holmes,* 503 U.S., at 268, 112 S.Ct. 1311, with a particular emphasis on the "demand for some direct relation between the injury asserted and the injurious conduct alleged,"*ibid.;* see also *Anza,supra,* at 461, 126 S.Ct. 1991 ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries"). The direct-relation requirement avoids the difficulties associated with attempting "to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors,"*Holmes,* 503 U.S., at 269, 112 S.Ct. 1311; prevents courts from having "to adopt complicated rules of apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries,"*ibid.;* and recognizes the fact that "directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely,"*id.,* at 269-270, 112 S.Ct. 1311.[FN5]

> FN5. Applying these principles in *Holmes,* the Court held that the Securities Investor Protection Corporation (SIPC) could not recover for injuries caused by a stock-manipulation scheme that prevented two broker-dealers from meeting obligations to their customers, thereby triggering SIPC's duty to reimburse the customers. 503 U.S., at 270-274, 112 S.Ct. 1311. And in *Anza,* the Court applied the principles of *Holmes* to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

preclude a company from recovering profits it allegedly lost when a rival business was able to lower its prices because it failed to charge the requisite sales tax on cash sales. <u>547 U.S., at 456-461, 126 S.Ct. 1991</u>.

Pointing to our reliance on common-law proximate-causation principles in *Holmes* and *Anza,* petitioners argue that "[u]nder well-settled common-law principles, proximate cause is established for fraud claims only where the plaintiff can demonstrate that he relied on the misrepresentation."Brief for Petitioners 28. In support of this argument, petitioners cite <u>Restatement (Second) of Torts § 548A</u>, which provides that "[a] fraudulent misrepresentation is a legal cause of a pecuniary loss resulting from action or inaction in reliance upon it if, but only if, the loss might reasonably be expected to result from the reliance."Thus, petitioners conclude, "a plaintiff asserting a civil RICO claim predicated on mail fraud cannot satisfy the proximate cause requirement unless he can establish that his injuries resulted from his reliance on the defendant's fraudulent misrepresentation."Brief for Petitioners 28.

\*10[9] Petitioners' argument is twice flawed. First, as explained above, the predicate act here is not common-law fraud, but mail fraud. Having rejected petitioners' argument that reliance is an element of a civil RICO claim based on mail fraud, we see no reason to let that argument in through the back door by holding that the proximate-cause analysis under RICO must precisely track the proximate-cause analysis of a common-law fraud claim."Reliance is not a general limitation on civil recovery in tort; it 'is a specialized condition that happens to have grown up with common law fraud.'"*Anza,* <u>547 U.S., at 477, 126 S.Ct. 1991</u> (THOMAS, J., concurring in part and dissenting in part) (quoting <u>Systems Management, 303 F.3d, at 104</u>). That "specialized condition," whether characterized as an element of the claim or as a prerequisite to establishing proximate causation, simply has no place in a remedial scheme keyed to the commission of mail fraud, a statutory offense that is distinct from common-law fraud and that does not require proof of reliance.

[10] Second, while it may be that first-party reliance is an element of a common-law fraud claim, there is no general common-law principle holding that a fraudulent misrepresentation can cause legal injury only to those who rely on it. The Restatement provision cited by petitioners certainly does not support that proposition. It provides only that the plaintiff's loss must be a foreseeable result of *someone's* reliance on the misrepresentation.[FN6]It does not say that only those who rely on the misrepresentation can suffer a legally cognizable injury. And any such notion would be contradicted by the long line of cases in which courts have permitted a plaintiff directly injured by a fraudulent misrepresentation to recover even though it was a third party, and not the plaintiff, who relied on the defendant's misrepresentation.[FN7] Indeed, so well established is the defendant's liability in such circumstances that the Restatement (Second) of Torts sets forth as a "[g]eneral [p]rinciple" that "[o]ne who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances." § 870. As an illustration, the Restatement provides the example of a defendant who "seeks to promote his own interests by telling a known falsehood to *or about* the plaintiff or his product."*Id.,* Comment *h* (emphasis added). And the Restatement specifically recognizes "a cause of action" in favor of the injured party where the defendant "defrauds another for the purpose of causing pecuniary harm to a third person."*Id.,* § 435A, Comment *a.* Petitioners' contention that proximate cause has traditionally incorporated a first-party reliance requirement for claims based on fraud cannot be reconciled with these authorities.

> FN6. In addition to <u>Restatement (Second) of Torts § 548A (1977)</u>, petitioners cite Comment *a* to that section, which provides that "[c]ausation, in relation to losses incurred by reason of a misrepresentation, is a matter of the recipient's reliance in fact upon the misrepresentation in taking some action or in refraining from it."Like <u>§ 548A</u> itself, however, the comment does not support petitioners' argument. Of course, a misrepresentation can cause harm only if a recipient of the misrepresentation relies on it. But that does not mean that the only injuries proximately caused by the misrepresentation are those suffered by the recipient.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN7. Such cases include <u>Rice v. Manley, 66 N.Y. 82 (1876)</u> (permitting plaintiffs who had arranged to buy a large quantity of cheese to recover against a defendant who induced the vendor to sell him the cheese by falsely representing to the vendor that plaintiffs no longer wished to purchase it); and <u>Gregory v. Brooks</u>, 35 Conn. 437 (1868) (permitting plaintiff wharf owner to recover against a defendant who, in order to deprive plaintiff of business, misrepresented himself to be a superintendent of wharves and ordered a vessel unloading at plaintiff's wharf to leave); see also Brief for Respondents 26-29 (collecting cases).

Petitioners argue that these cases are irrelevant because they would be treated today as specialized torts, such as wrongful interference with contractual relations, rather than as common-law fraud. See, *e.g.,* Restatement (Second) of Torts § 767, Comment *c* (recognizing that "one [may be] liable to another for intentional interference with economic relations by inducing a third person by fraudulent misrepresentation not to do business with the other"). But petitioners miss the point. The cases are not cited as evidence that common-law fraud can be established without showing first-party reliance. Rather, they-along with the Restatement's recognition of specialized torts based on third-party reliance-show that a fraudulent misrepresentation can proximately cause actionable injury even to those who do not rely on the misrepresentation.

Nor is first-party reliance necessary to ensure that there is a sufficiently direct relationship between the defendant's wrongful conduct and the plaintiff's injury to satisfy the proximate-cause principles articulated in *Holmes* and *Anza.* Again, this is a case in point. Respondents' alleged injury-the loss of valuable liens-is the direct result of petitioners' fraud. It was a foreseeable and natural consequence of petitioners' scheme to obtain more liens for themselves that other bidders would obtain fewer liens. And here, unlike in *Holmes* and *Anza,* there are no independent factors that account for respondents'

injury, there is no risk of duplicative recoveries by plaintiffs removed at different levels of injury from the violation, and no more immediate victim is better situated to sue. Indeed, both the District Court and the Court of Appeals concluded that respondents and other losing bidders were the *only* parties injured by petitioners' misrepresentations. App. to Pet. for Cert. 17a; 477 F.3d, at 931.Petitioners quibble with that conclusion, asserting that the county would be injured too if the taint of fraud deterred potential bidders from participating in the auction. But that eventuality, in contrast to respondents' direct financial injury, seems speculative and remote.

**\*11** Of course, none of this is to say that a RICO plaintiff who alleges injury "by reason of" a pattern of mail fraud can prevail without showing that *someone* relied on the defendant's misrepresentations. Cf. *Field v. Mans,* 516 U.S. 59, 66, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) ("No one, of course, doubts that some degree of reliance is required to satisfy the element of causation inherent in the phrase 'obtained by' " in 11 U.S.C. § 523(a)(2)(A), which prohibits the discharge of debts for money or property "obtained by" fraud). In most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation. If, for example, the county had not accepted petitioners' false attestations of compliance with the Single, Simultaneous Bidder Rule, and as a result had not permitted petitioners to participate in the auction, respondents' injury would never have materialized. In addition, the complete absence of reliance may prevent the plaintiff from establishing proximate cause. Thus, for example, if the county knew petitioners' attestations were false but nonetheless permitted them to participate in the auction, then arguably the county's actions would constitute an intervening cause breaking the chain of causation between petitioners' misrepresentations and respondents' injury.

Accordingly, it may well be that a RICO plaintiff alleging injury by reason of a pattern of mail fraud must establish at least third-party reliance in order to prove causation. "But the fact that proof of reliance is often used to prove an element of the plaintiff's cause of action, such as the element of causation, does not transform reliance itself into an element of the cause of action."*Anza,* 547 U.S., at 478, 126 S.Ct. 1991 (THOMAS, J., concurring in part and dissenting in

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----
--- S.Ct. ----, 2008 WL 2329761 (U.S.)
**(Cite as: --- S.Ct. ----, 2008 WL 2329761 (U.S.))**

part). Nor does it transform first-party reliance into an indispensable requisite of proximate causation. Proof that the plaintiff relied on the defendant's misrepresentations may in some cases be sufficient to establish proximate cause, but there is no sound reason to conclude that such proof is always necessary. By the same token, the absence of first-party reliance may in some cases tend to show that an injury was not sufficiently direct to satisfy § 1964(c)'s proximate-cause requirement, but it is not in and of itself dispositive. A contrary holding would ignore *Holmes'* instruction that proximate cause is generally not amenable to bright-line rules.

                        C

**\*12** As a last resort, petitioners contend that we should interpret RICO to require first-party reliance for fraud-based claims in order to avoid the "over-federalization" of traditional state-law claims. In petitioners' view, respondents' claim is essentially one for tortious interference with prospective business advantage, as evidenced by Count V of their complaint. Such claims have traditionally been handled under state law, and petitioners see no reason why Congress would have wanted to supplement traditional state-law remedies with a federal cause of action, complete with treble damages and attorney's fees, in a statute designed primarily to combat organized crime. See *Anza,supra,* at 471-475, 126 S.Ct. 1991 (THOMAS, J., concurring in part and dissenting in part); *Beck,* 529 U.S., at 496-497, 120 S.Ct. 1608.A first-party reliance requirement, they say, is necessary "to prevent garden-variety disputes between local competitors (such as this case) from being converted into federal racketeering actions."Reply Brief for Petitioners 3.

Whatever the merits of petitioners' arguments as a policy matter, we are not at liberty to rewrite RICO to reflect their-or our-views of good policy. We have repeatedly refused to adopt narrowing constructions of RICO in order to make it conform to a preconceived notion of what Congress intended to proscribe. See, *e.g.,National Organization for Women, Inc. v. Scheidler,* 510 U.S. 249, 252, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) (rejecting the argument that "RICO requires proof that either the racketeering enterprise or the predicate acts of racketeering were motivated by an economic purpose"); *H.J. Inc. v. Northwestern Bell Telephone*

*Co.,* 492 U.S. 229, 244, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (rejecting "the argument for reading an organized crime limitation into RICO's pattern concept"); *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 481, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) (rejecting the view that RICO provides a private right of action "only against defendants who had been convicted on criminal charges, and only where there had occurred a 'racketeering injury' ").

[11] We see no reason to change course here. RICO's text provides no basis for imposing a first-party reliance requirement. If the absence of such a requirement leads to the undue proliferation of RICO suits, the "correction must lie with Congress." *Id.,* at 499, 105 S.Ct. 3275."It is not for the judiciary to eliminate the private action in situations where Congress has provided it."*Id.,* at 499-500, 105 S.Ct. 3275.

                        IV

For the foregoing reasons, we hold that a plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations. Accordingly, the judgment of the Court of Appeals is affirmed.

*It is so ordered.*

U.S.,2008.
Bridge v. Phoenix Bond & Indem. Co.
--- S.Ct. ----, 2008 WL 2329761 (U.S.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*EXHIBIT B*

Case 2:08-cv-01342-JS-WDW   Document 22-2   Filed 06/16/08   Page 24 of 25 PageID #: 292



**STATE OF NEW YORK**
**INSURANCE DEPARTMENT**
25 BEAVER STREET
NEW YORK, NEW YORK 10004

The Office of General Counsel issued the following opinion on April 17, 2001 representing the position of the New York State Insurance Department.

**Re: Licensing Requirements for Independent Adjusters**

**Question Presented**:

Must ABC Company be licensed as an independent adjuster where it acts as an intermediary between exempt insurers and preferred provider organizations, in arranging a discounted fee for service in connection with services rendered by health providers through a preferred provider organization, and provides information on this fee arrangement to patients through its subsidiary company?

**Conclusion**:

Assuming that the activities performed by ABC Company relate strictly to arranging a fee schedule and do not relate to claims, it would not need to be licensed as an independent adjuster to perform these tasks.

**Facts**:

ABC Company acts as an intermediary between "self-insurers" and preferred provider organizations in arranging a discounted fee for service in connection with services rendered by health providers through a preferred provider organization. XYZ Company is a subsidiary technology company of ABC Company that provides information to patients, who are employees of the self-insurers, relative to this discounted fee arrangement electronically or through the internet. Neither ABC Company nor XYZ Company adjusts claims on behalf of insurers.

**Analysis**:

Although the inquirer refer to the entities that ABC Company provides services for as self-insurers, they are actually exempt insurers because they provide health insurance to their employees under employee welfare benefit plans that are governed by the federal Employee Retirement and Income Security Act (ERISA, 29 U.S.C. 1001-1461). As such, they are exempt from the licensing requirements of the New York State Insurance Law. However, even those entities that adjust on behalf of exempt insurers must be licensed as independent adjusters.

N.Y. Ins. Law § 2101(g)(1) (McKinney 2000) defines the term independent adjuster as:

> [A]ny person, firm, association or corporation who, or which, for money, commission or
> any other thing of value, acts in this state on behalf of an *insurer* in the work of
> *investigating and adjusting claims* arising under insurance contracts issued by such
> insurer and who performs such duties required by such insurer as incidental to such
> claims. . .

Therefore, certain entities that function as adjusters on behalf of insurers must be licensed under N.Y. Ins. Law § 2108 (2000). Thus, the question becomes whether ABC Company's activities constitute the investigating and adjusting of claims within the purview of N.Y. Ins. Law § 2101 (g) (1) (McKinney 2000).

In determining what constitutes investigating and adjusting of claims, this Department has traditionally considered

Case 2:08-cv-01342-JS-WDW   Document 22-2   Filed 06/16/08   Page 25 of 25 PageID #: 293

whether the duties performed in the handling of a claim required the exercise of discretionary authority conferred by the insurer, as opposed to the performance of strictly ministerial tasks. Past opinions have held that reviewing and processing claims, authorizing payments, issuing and signing checks, handling inquiries from insureds, evaluating the merits of a loss, making recommendations to the insurer, are all discretionary acts, while acts such as data processing are ministerial in nature.

Based upon the limited facts provided, it appears that ABC Company is doing is arranging the discounted fee for service and providing information to patients regarding this fee arrangement through its subsidiary. Therefore, assuming that the activities performed by ABC Company relate strictly to arranging a fee schedule and do not relate to claims, it would not need to be licensed as an independent adjuster to perform these tasks.

The scope of this opinion is limited to the licensing requirements under the Insurance Law. Licensing may be required pursuant to the New York General Business Law or some other New York State Statute.

For further information, you may contact Attorney Pascale Joasil at the New York City Office.